IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Friends of Lackawanna, Joseph James : \
and Mari May, Edward and Beverly : \
Mizanty, and Katherine and Todd : \
Spanish, : \
              Appellants : \
: \
        v. :   No. 1586 C.D. 2018 \
:   Argued: September 17, 2019 \
Dunmore Borough Zoning Hearing : \
Board : \
: \
        v. : \
: \
Dunmore Borough, Keystone Sanitary : \
Landfill, Inc., F&L Realty Corporation, : \
F&L Realty, Inc., Keystone Company : \
and Keystone Landfill, Inc. :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge \
                 HONORABLE P. KEVIN BROBSON, Judge \
                 HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION \
BY PRESIDENT JUDGE LEAVITT            FILED: February 18, 2020

        The Friends of Lackawanna and individual objectors, Joseph James and Mari May, Edward and Beverly Mizanty, and Katherine and Todd Spanish (collectively, Objectors),[1] appeal an order of the Court of Common Pleas of Lackawanna County (trial court) that affirmed a decision of the Dunmore Borough Zoning Hearing Board (Zoning Board). Objectors contend that the height restrictions for buildings set forth in the Borough of Dunmore Zoning Ordinance

---

[1] Friends of Lackawanna is a registered, non-profit organization committed to protecting the community's property values, image, and the environment. Reproduced Record at 67a (R.R. __). The individual citizens own property abutting or in the immediate vicinity of Keystone Sanitary Landfill, Inc.

(Zoning Ordinance)[2] apply to sanitary landfills and that the Zoning Board erred in otherwise holding. Concluding that the Zoning Board improvidently granted Objectors a hearing, we vacate the trial court's order and remand the matter to the trial court to vacate the Zoning Board's decision.

## Background

Since 1972, Keystone Sanitary Landfill, Inc. (Keystone) has owned and operated a 714-acre sanitary landfill, which is divided between Dunmore Borough and neighboring Throop Borough. Keystone's landfill in Dunmore Borough consists of 398 acres in the M-1 (Light Manufacturing) District. The landfill is regulated by the Pennsylvania Department of Environmental Protection (DEP) pursuant to the Municipal Waste Planning, Recycling and Waste Reduction Act[3] and the Solid Waste Management Act (SWMA).[4] It currently operates under a Phase II Major Permit Modification, with an existing elevation of 1573 feet.

In 2014, Keystone submitted an application to DEP to use 216 acres within the preexisting 714-acre permit area as a Phase III Major Permit Modification (Phase III). These 216 acres are in that part of the landfill located in the M-1 District in Dunmore Borough. Under Keystone's requested permit modification, its landfill would accept new waste and excavated waste from an unlined site. Under the Phase III permit, Keystone intended to expand the landfill vertically, to a height of 1722 feet.

In November 2014, Keystone requested a preliminary opinion from the Borough's Zoning Officer on whether Phase III complied with the Zoning

---

[2] BOROUGH OF DUNMORE ZONING ORDINANCE (2000) (ZONING ORDINANCE).

[3] Act of July 28, 1988, P.L. 556, *as amended*, 53 P.S. §§4000.101-4000.1904.

[4] Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§6018.101-6018.1003.

2

Ordinance.[5] Keystone made this request pursuant to its "Host Municipality Fee Agreement" with Dunmore Borough, which required Keystone to "make immediate application for an opinion to the Dunmore Borough Zoning Officer under, [*inter alia*] 53 P.S. [§]10916.2,[6] to confirm the landfill is a pre-existing use as a landfill, as that term is defined in [the SWMA]; and is not a building under the current zoning ordinance pertaining to maximum building height." R.R. 112a-13a. The Zoning Officer responded that the terms "building" and "building height" pertain to structures with a roof supported by columns or walls. Noting that Keystone's landfill "lacks walls and columns, and of particular note there is no roof," the Zoning Officer concluded that the height requirement for buildings in the M-1 District was inapplicable to Keystone's landfill. Preliminary Opinion at 11; R.R. 1166a.

Objectors appealed the Zoning Officer's preliminary opinion to the Zoning Board, asserting that the landfill constituted a structure that was subject to the 50-foot height limitation on buildings in the M-1 District.

The Zoning Board conducted six days of hearings. Initially, Keystone moved to dismiss Objectors' appeal, asserting that they lacked standing. The Zoning Board deferred ruling on its motion, and Objectors presented evidence.

Objectors' only witness was Jeffrey Spaide, an environmental engineer who works for DEP and is assigned to the Northeast Region of the Commonwealth. In that capacity, Spaide reviews permit applications for landfills, transfer stations, incinerators and waste processing facilities. In the course of his work, Spaide visited Keystone's landfill on several occasions.

---

[5] Dunmore Borough first enacted a zoning regulation in 1942 to address "dumps." R.R. 1093a. A 1979 amendment authorized sanitary landfills as a permitted conditional use in the M-1 District. *Id.*

[6] Section 916.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by Section 99 of the Act of December 21, 1988, P.L. 1329.

3

Spaide testified that Keystone's sanitary landfill was constructed using liners, anchor trenches, waste placement, gas collection systems, leachate collection systems and stormwater collection systems. There are manholes to access the landfill's leachate collection system pipes. Notes of Testimony (N.T.), 4/30/2015, at 33; R.R. 383a. These systems would be involved in the Phase III expansion. Additionally, Keystone's sanitary landfill has wells that extract gas from the landfill and pipe it to a point onsite where the gas is flared. Spaide testified that as part of each cell construction, there is a capping layer once the landfill "reaches final elevations." *Id*. at 28; R.R. 378a. The capping layer is similar to the liner at the bottom of the landfill.

Keystone presented testimony and documentary evidence, including expert testimony about the distances of homes from the Phase III expansion area and the extent to which residents within a three-mile radius of the landfill would be able to see the expansion. Keystone also presented testimony about landfill height and the building height restrictions in the Zoning Ordinance.

The Zoning Board determined that Objectors lacked standing to file the appeal. Nevertheless, the Zoning Board addressed the merits of Objectors' appeal.

The Zoning Board began with the definitions in the Zoning Ordinance. The term "building" is defined as "[a]ny structure having a roof supported by columns or walls, used or intended to be used for the shelter or enclosure of persons, animals, or property…." ZONING ORDINANCE §11.115; R.R. 862a. The term "structure" means, "[a]nything constructed or erected, the use of which requires location on the ground or attachment to something having a fixed location on the

4

ground." ZONING ORDINANCE §11.201; R.R. 879a.[7] The Zoning Ordinance defines "Sanitary Land Fill" as

> any facility devoted to the storage and/or disposal of solid wastes[8] pursuant to the regulations of the Pennsylvania Department of Environmental Protection governing sanitary land fills…. Sanitary landfills shall be subject to all regulations contained herein governing earth-moving activities.

ZONING ORDINANCE §11.185; R.R. 875a. The Zoning Ordinance defines "building height" as follows:

> The vertical distance measured from the mean level of the ground surrounding the building to a point midway between the highest and lowest point of the roof, but not including chimneys, spires, towers, elevator penthouses, tanks, and similar projections.

ZONING ORDINANCE §11.117; R.R. 862a.

The Zoning Board held that a landfill is not a "structure" because it lacks an "attachment" or "fixed location on the ground." ZONING ORDINANCE §11.201. In support, the Zoning Board noted the testimony of Keystone's expert, Joseph Zadlo, who described the landfill as "trash … being dumped and earth moving equipment compressing and distributing the pile of trash after it came out of the truck." Zoning Board Decision at 7; R.R. 73a. The Zoning Board reasoned that the landfill consisted of moveable materials that could not be attached to the ground or have a fixed location on the ground.

---

[7] Section 11.201 contains a non-exhaustive list of examples of structures, which does not specifically include landfills.

[8] The term "solid waste" is defined as "[a]ny garbage, refuse, industrial, lunchroom or office waste or other material including solid, liquid, semi-solid or contained gaseous materials, resulting from the operation of residential, municipal, commercial or institutional establishments and from community activities." ZONING ORDINANCE §11.194; R.R. 876a.

5

Assuming, *arguendo*, the landfill was a structure, the Zoning Board concluded that the height restriction in the Zoning Ordinance did not apply to a landfill.  Section 4.210 of the Zoning Ordinance states that:

> No building or structure shall have a greater number of stories than are permitted in Article 3 hereof, provided further that the aggregate height of such buildings or structures shall not exceed the number of feet permitted in Article 3, except as otherwise provided herein in Section 4.220.

ZONING ORDINANCE §4.210; R.R. 754a.[9]  Article 3, entitled "District Regulations," sets forth height restrictions by zoning district.  ZONING ORDINANCE, art. 3, Table No. 4; R.R. 742a, 751a.  Table No. 4 governs building size restrictions for "nonresidential zones," including the M-1 District where Keystone's landfill is located.  Table 4 states:

Maximum Building Height – Feet          50

Maximum Building Height – Stories       2

*Id*., R.R. 751a.  The Zoning Ordinance sets the precise methodology for measuring building height as follows:

> *The vertical distance measured from the mean level of the ground* surrounding the building *to a point midway between the highest and lowest point of the roof,* but not including chimneys, spires, towers, elevator penthouses, tanks, and similar projections.

---

[9] The Zoning Ordinance establishes exceptions to the height limitations:

> Height limitations stipulated elsewhere in this Ordinance shall not apply to open amusement areas, barns, silos, schools, church spires, belfries, cupolas and domes, monuments, water towers, utility poles, chimneys, smokestacks, flagpoles, residential telecommunications facilities; or to parapet walls extending not more than four (4) feet above the limiting height of the building.

ZONING ORDINANCE §4.220; R.R. 754a.  Landfills are not included in this list.

6

ZONING ORDINANCE §11.117; R.R. 862a. (emphasis added).

Keystone's landfill does not have a roof, let alone a spire or an elevator penthouse. Accordingly, the Zoning Board held that it was impossible to apply the prescribed method for measuring a building's height to Phase III of Keystone's landfill.

The Zoning Board concluded that a sanitary landfill was not a "structure" or a "building" and that its "height" was impossible of measurement under the prescribed methodology. Thus, Keystone's landfill was not limited to a height of 50 feet or 2 stories. The Zoning Board affirmed the Zoning Officer's preliminary opinion, and Objectors appealed to the trial court.

## Trial Court's Decision

Without taking any additional evidence, the trial court affirmed the Zoning Board.[10] The trial court agreed that the height restrictions in the Zoning Ordinance did not apply to a landfill. Additionally, the trial court observed that the Zoning Ordinance contained provisions specific to sanitary landfills, subjecting them "to all regulations contained herein governing earth-moving activities." ZONING ORDINANCE §11.185. The Zoning Ordinance sets height restrictions for fences surrounding landfills, but it does not impose a height restriction on the landfill itself.

The trial court agreed that Keystone's landfill was not a "structure," *i.e.*, "[a]nything constructed or erected, the use of which requires location on the ground or attachment to something having a fixed location on the ground." ZONING

---

[10] Initially, the trial court dismissed Objectors' appeal on the basis that Objectors lacked standing. Our Court reversed the trial court's decision and remanded the case to the trial court to decide the merits of Objectors' appeal. *See Friends of Lackawanna v. Dunmore Borough Zoning Hearing Board and Dunmore Borough* (Pa. Cmwlth., No. 656 C.D. 2017, filed May 7, 2018).

ORDINANCE §11.201. It also agreed that even if the landfill was considered a "structure," the formula for measuring the height of a building was written in such a way that it was impossible to apply to a landfill. Further, the Zoning Ordinance did not provide an alternative method to measure the height of a landfill.

Objectors appealed to this Court.

## Appeal

On appeal,[11] Objectors raise one issue. They contend that the Zoning Board abused its discretion and erred in holding that Keystone's landfill was not a structure and that the landfill was not subject to the height restrictions in the Zoning Ordinance.

In response, Keystone raises a procedural challenge to Objectors' appeal. It argues that the Zoning Board lacked jurisdiction to review the merits of the Zoning Officer's preliminary opinion. It contends that the Zoning Board's jurisdiction was limited to a substantive validity challenge to the Zoning Ordinance, and Objectors presented no such challenge. Keystone also contends that Objectors' appeal is moot because it has eliminated the height increase from the Phase III expansion. On the merits, Keystone contends that the Zoning Board and trial court correctly construed the Zoning Ordinance.

## Zoning Board Jurisdiction

We begin with Keystone's challenge to the Zoning Board's jurisdiction to rule on Objectors' appeal of the Zoning Officer's preliminary opinion. Keystone

---

[11] Where the trial court does not take any additional evidence, this Court's scope of review determines whether the zoning board committed an error of law or an abuse of discretion. *Dore v. Zoning Hearing Board of West Norriton Township*, 587 A.2d 367, 368 (Pa. Cmwlth. 1991). This Court may only conclude that the zoning board abused its discretion "if its findings are not supported by substantial evidence." *Id.* (quoting *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)).

8

argues that under the MPC, the only issue properly before the Zoning Board in Objectors' appeal of the Zoning Officer's preliminary opinion was the substantive validity of the Zoning Ordinance. Keystone contends that we must dismiss Objectors' appeal because the Zoning Board lacked jurisdiction to consider the merits of the Zoning Officer's preliminary opinion.

Objectors respond that their appeal was authorized by Section 909.1(a) of the MPC, which provides for a review of any determination of a zoning officer. *See* Section 909.1(a) of the MPC, 53 P.S. §10909.1(a).[12] Objectors contend that this Court specifically remanded this matter to the trial court for a decision on the merits of their appeal. Objectors' Reply Brief at 3.

As this Court has explained, Section 916.2 of the MPC "provides a mechanism whereby a landowner wishing to take advantage of an ordinance or map may foreclose challenge to such ordinance or map by requesting a preliminary opinion" from the zoning officer. *MCM Ventures, Ltd. v. Zoning Hearing Board of the Borough of Sewickley* (Pa. Cmwlth., No. 759 C.D. 2011, filed August 10, 2012), slip op. at 3-4 (unreported).[13] Section 916.2 states, in relevant part, as follows:

> In order not to unreasonably delay the time when a landowner may *secure assurance that the ordinance* or map under which he proposed to build *is free from challenge*, and recognizing that the procedure for preliminary approval of his development may be too cumbersome or may be unavailable, *the landowner may advance the date from which time for any challenge to the ordinance* or map will run under section 914.1[14] by the following procedure:

---

[12] Added by the Act of December 21, 1988, P.L. 1329.

[13] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[14] Section 914.1 provides, in relevant part, as follows:

9

(1)  The landowner may submit plans and other materials describing his proposed use or development to the zoning officer for a preliminary opinion as to their compliance with the applicable ordinances and maps.  Such plans and other materials shall not be required to meet the standards prescribed for preliminary, tentative or final approval or for the issuance of a building permit so long as they provide reasonable notice of the proposed use or development and a sufficient basis for a preliminary opinion as to its compliance.

(2)  If the zoning officer's preliminary opinion is that the use or development complies with the ordinance or map, notice thereof shall be published once each week for two successive weeks in a newspaper of general circulation in the municipality…. *The favorable preliminary approval under section 914.1 and the time therein specified for commencing a proceeding with the board shall run from the time when the second notice thereof has been published.*

---

(a) No person shall be allowed to file any proceeding with the board later than 30 days after an application for development, preliminary or final, has been approved by an appropriate municipal officer, agency or body if such proceeding is designed to secure reversal or to limit the approval in any manner unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given.  If such person has succeeded to his interest after such approval, he shall be bound by the knowledge of his predecessor in interest.  The failure of anyone other than the landowner to appeal from an adverse decision on a tentative plan pursuant to section 709 or *from an adverse decision by a zoning officer on a challenge to the validity of an ordinance or map pursuant to section 916.2* shall preclude an appeal from a final approval except in the case where the final submission substantially deviates from the approved tentative approval.

Section 914.1(a), added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10914.1(a) (emphasis added).

10

53 P.S. §10916.2 (emphasis added). In short, Section 916.2 sets up a procedure "to advance the date from which time for any challenge to the ordinance or map will run under [S]ection 914.1 [of the MPC]." *Id.*

Section 909.1 of the MPC sets forth the categories of appeals over which a zoning board has jurisdiction. Section 909.1(a) states, in pertinent part, as follows:

> (a)   The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:
>
> * * *
>
> (3)   Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot.
>
> * * *
>
> *(8)   Appeals from the zoning officer's determination under section 916.2.*

53 P.S. §10909.1(a)(3), (8) (emphasis added).

In an appeal of "a zoning officer's determination under Section 916.2," the issue before the zoning board is the substantive validity of the zoning ordinance. This Court so held in *Susquehanna Rheems Holdings, LLC v. West Donegal Township Zoning Hearing Board* (Pa. Cmwlth., No. 1394 C.D. 2017, filed July 23, 2018) (unreported), *petition for allowance of appeal denied*, 207 A.3d 906 (Pa. 2019).

In *Susquehanna Rheems Holdings, LLC,* the landowner sought a preliminary opinion under Section 916.2 that its proposed land development plan

11

complied with the township's zoning ordinance, which had recently rezoned the land in question from commercial to agricultural. The zoning officer issued a favorable preliminary opinion. The objectors filed a substantive validity challenge and appealed the merits of the zoning officer's preliminary opinion. The zoning board concluded that the only issue before it was the validity of the ordinance, not the merits of the preliminary opinion. The zoning board explained that the sole purpose of a preliminary opinion is to advance the date by which a challenge to the underlying ordinance or map begins to run; it is not a binding determination on whether the proposed land use complies with the zoning ordinance. *Susquehanna Rheems Holdings, LLC*, slip op. at 13. The trial court affirmed, as did this Court. We held the only issue before the Court was the substantive validity of the zoning ordinance.[15]

Keystone argues that the Zoning Board lacked jurisdiction over the merits of the Zoning Officer's preliminary opinion. Objectors respond that Section 909.1(a) authorizes an appeal of the merits of any determination of a zoning officer, including a preliminary opinion issued pursuant to Section 916.2 of the MPC. We agree with Keystone.

On December 22, 2014, the Zoning Officer issued a preliminary opinion that Keystone's proposed landfill expansion complied with the Zoning Ordinance. On January 20, 2015, Objectors appealed this preliminary opinion to the Zoning Board raising 14 issues, including a challenge to the substantive validity of

---

[15] On appeal to the trial court, the objectors also raised the issue that the zoning officer's preliminary opinion was invalid; however, they did not brief this issue or raise it at oral argument. Therefore, the trial court determined that the objectors waived this issue. *Susquehanna Rheems Holdings, LLC*, slip op. at 49, n.15.

the Ordinance.[16]  However, by the time of the hearing before the Zoning Board, Objectors limited their challenge to "whether the height limitation under the … Zoning Ordinance applies to [Keystone]."  Zoning Board Decision at 3, Finding of Fact No. 25; R.R. 69a.  Thereby, Objectors abandoned their substantive challenge to the Zoning Ordinance.

Section 916.2 of MPC allows a land developer to "advance the date from which time for *any challenge to the ordinance* or map *will run* under Section 914.1."  53 P.S. §10916.2 (emphasis added).  Section 916.2 does not confer broad authority upon a zoning officer to issue an advisory determination on the validity of a land use proposal.  A favorable preliminary opinion does not give the landowner a substantive land use approval.  *See* Keystone's Brief at 14 (acknowledging that a preliminary opinion "creates no vested rights in the landowner").

The Zoning Officer's preliminary opinion reduced the period of time Objectors had to challenge the substantive validity of the Zoning Ordinance.  Once Objectors abandoned their substantive validity challenge to the Zoning Ordinance, the Zoning Board was deprived of jurisdiction to consider the other 13 issues raised by Objectors in their appeal.

Objectors maintain that a zoning hearing board can always consider the merits of a preliminary opinion of a zoning officer.  It relies on Section 909.1(a)(3) of the MPC, which permits "[a]ppeals from the *determination* of the

_____

[16] Specifically, Objectors argued that the Zoning Ordinance is substantively invalid if it fails "to state a height limit or other zoning restrictions applicable to landfills and the proposed [Keystone landfill] expansion."  R.R. 103a.

13

zoning officer." 53 P.S. §10909.1(a)(3) (emphasis added).[17] Notably, Objectors did not appeal the Zoning Officer's preliminary opinion under Section 909.1(a)(3) but, rather, under Section 909.1(a)(8), which relates only to appeals arising from Section 916.2. We reject Objectors' argument.

Section 909.1(a)(3) does not confer jurisdiction on a zoning hearing board to consider the merits of a preliminary opinion issued under Section 916.2 of the MPC. Simply, a preliminary opinion is not a "determination" for purposes of Section 909.1(a)(3). When interpreting a statute, courts must give full effect to each provision of the statute if at all possible. *East Lampeter Township v. Pennsylvania State Horse Racing Commission*, 704 A.2d 703, 708 (Pa. Cmwlth. 1997). Section 909.1(a)(3) and Section 909.1(a)(8) provide for different categories of appeals. To hold that Section 909.1(a)(3) provides for an appeal from the zoning officer's preliminary opinion issued pursuant to Section 916.2 would render the language of Section 909.1(a)(8) as surplusage. 1 Pa. C.S. §1921(a) ("Every statute shall be construed, if possible, to give effect to all [of] its provisions.").

We also reject Objectors' contention that this Court's decision in *North Codorus Township v. North Codorus Township Zoning Hearing Board*, 873 A.2d 845 (Pa. Cmwlth. 2005), supports their interpretation of Section 909.1(a)(3). There, a land development plan was filed after the enactment of a zoning ordinance amendment but before its effective date. The land developer requested a determination as to which version of the ordinance applied, and the zoning officer informed the developer that the amended zoning ordinance applied. The developer appealed, and the zoning hearing board revised the decision of the zoning officer.

---

[17] The term "determination" is defined as a "final action by an officer, body or agency charged with the administration of any land use ordinance or applications thereunder[.]" Section 107 of the MPC, 53 P.S. §10107.

14

The township appealed, arguing that the zoning hearing board lacked jurisdiction because the zoning officer's oral statement was not a "determination." The trial court held that the zoning officer's non-written opinion constituted a "determination" for purposes of Section 909.1(a)(3). This Court agreed and held that the zoning officer's oral "determination" was reviewable by the zoning hearing board.

In contrast to *North Codorus*, Keystone had not submitted a development plan or zoning permit application to Dunmore Borough. The zoning officer's preliminary opinion is, by definition, limited in scope to the procedure described in Section 916.2 of the MPC. That preliminary opinion has no bearing on any zoning permit application yet to be made by Keystone, if any is needed.

## Conclusion

For the reasons set forth above, we conclude that the Zoning Board lacked jurisdiction to review the merits of the Zoning Officer's preliminary opinion. Accordingly, the trial court should have vacated the decision of the Zoning Board. Therefore, we will vacate the order of the trial court and remand the matter to the trial court to vacate the decision of the Zoning Board.

_____
MARY HANNAH LEAVITT, President Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Friends of Lackawanna, Joseph James and Mari May, Edward and Beverly Mizanty, and Katherine and Todd Spanish,<br>Appellants | : : : : : : | |
| v. | : | No. 1586 C.D. 2018 |
| Dunmore Borough Zoning Hearing Board | : : : : : | |
| v. | : : | |
| Dunmore Borough, Keystone Sanitary Landfill, Inc., F&L Realty Corporation, F&L Realty, Inc., Keystone Company and Keystone Landfill, Inc. | : : : : : | |

# **O R D E R**

AND NOW, this 18th day of February, 2020, the order of the Common Pleas of Lackawanna County (trial court) dated October 26, 2018, in the above-captioned matter is hereby VACATED, and this matter is REMANDED to the trial court with instructions to vacate the September 28, 2015, decision of the Dunmore Borough Zoning Hearing Board.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge